STATESIDE MACHINERY COMPANY, LTD., a corporation organized under the laws of Great Britain and Armin Speigel, Appellants,

v.

Joel M. ALPERIN, Appellee.

No. 78–1263.

United States Court of Appeals, Third Circuit.

Argued Sept. 28, 1978.

Decided Jan. 15, 1979.

Steven E. Pollan, Pollan & Pollan, Passaic, N. J., for appellants.

Paul A. Barrett, Nogi, O'Malley & Harris, P. C., Scranton, Pa., for appellee.

Before SEITZ, Chief Judge, HUNTER, Circuit Judge, and LACEY,[*] District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This appeal represents perhaps the final skirmish in an ongoing conflict between Stateside Machinery Co. (Stateside) and Joel Alperin over the arbitrability of a dispute between the two parties. In *Stateside Machinery Co. v. Alperin*, 526 F.2d 480 (3d Cir. 1975), we upheld a district court order denying Stateside's motion for a preliminary injunction against arbitration proceedings initiated by Alperin.[1] *Id.* at 483–84. After our decision, the arbitrators awarded Alperin damages against both Stateside and its president, Armin Speigel. In this appeal, we are asked to reverse a district court order confirming the arbitration award against Stateside and Speigel on the theory that the arbitration clause of a contract among the parties did not contemplate arbitration of the particular dispute in question. In the alternative, we are requested to hold that Speigel was never properly served with the petition to confirm the award and, thus, to reverse the lower court's order of confirmation as to him.

## FACTS

The procedural and factual history leading to this appeal is convoluted. On September 8, 1973, Stateside, a corporation organized under the laws of Great Britain, entered into a contract with Alperin, a Pennsylvania citizen, for the purchase by Stateside of all foreign patent rights to a machine known as a "Bad Loop Detector" (Detector). The Detector, which was invented by Alperin, was apparently designed to cut belt loops to the proper size and to discard imperfectly cut loops automatically. Stateside's president, Speigel, was explicitly made a party to the contract.[2]

The contract provided that the purchase price for the foreign patent rights would be $50,000, less $2,500 that had previously been paid by Stateside to Alperin.[3] Approximately $7,500 was to be paid on September 8, 1973, the date the contract was signed. The rest was to be paid in three equal installments due in March and September, 1974 and March, 1975.

Shortly after the contract was signed, Stateside evidently became dissatisfied with the Detector's performance and stopped payment on the $7,500 check, on the theory that Alperin's representations about the Detector were fraudulent. Alperin, consider-

---

[*] Honorable Frederick B. Lacey, United States District Judge for the District of New Jersey, sitting by designation.

[1.] Stateside also petitioned for a writ of mandamus in an attempt to halt the arbitration proceedings. We denied the petition. 526 F.2d at 485.

[2.] In relevant part, the contract stated:
This agreement is to serve as a contract between Mr. Armin Speigel and Stateside Machinery Company, London, England for the purchase of all foreign rights of the Triple A Trouser Mfg. Company, Inc., Bad Loop Detector owned by Joel M. Alperin outside the continental United States. . . .

[3.] In addition, Speigel agreed to pay up to $8,500 for the application fee for foreign patent rights.

ing Stateside to be in breach of contract for stopping payment, filed on April 30, 1974 a demand for binding arbitration with the American Board of Arbitration, pursuant to a provision in the contract which stated:

> This agreement here will be considered binding notwithstanding other agreements *and in a case of any unresolved issues will be subject to binding arbitration by the American Board of Arbitration* (emphasis added).

At approximately the same time that Alperin sought arbitration for Stateside's alleged breach of contract, he sued Stateside in Great Britain's High Court of Justice, Queen's Bench Division, for non-payment of the $7,500 check. A judgment in Alperin's favor was obtained in the British action on July 29, 1974. The British court agreed to postpone entering the judgment until September 10, 1974, evidently because Stateside persuaded it that the dispute was to be arbitrated in the United States and that the result of the arbitration should govern whether Alperin was entitled to the $7,500. *See* 526 F.2d at 481.

No steps were taken toward completing the arbitration by September 10 and judgment was ultimately entered on that date. Subsequently, however, the arbitration proceeding was scheduled for December 11, 1974. Until as late as October, 1974 Stateside attempted to have the British judgment stayed or vacated because of the pending arbitration. But, despite its seeming desire to have the dispute arbitrated, Stateside brought suit against Alperin in the Middle District of Pennsylvania on November 4, 1974. Speigel was not a party to this suit. Stateside alleged that Alperin had fraudulently induced it into entering the contract, asked for a return of the $2,500 it had advanced to Alperin, and requested a judgment declaring that it was not under the obligation to pay to Alperin any additional money because the contract was void on account of fraud.

While Stateside's suit was pending, it sought to enjoin the arbitration proceedings initiated by Alperin. The district court refused to issue a temporary restraining order to halt the arbitration, which took place in December, 1974 as planned. On January 21, 1975, the district court issued a memorandum opinion and order, in which it denied Stateside's attempt to obtain a preliminary injunction. Stateside then appealed the district court's order. The arbitration panel had not yet announced its decision when we dismissed Stateside's appeal on procedural grounds.[4] *Stateside Machinery Co. v. Alperin*, 526 F.2d 480 (3d Cir. 1975). Subsequently, the arbitration panel ruled in Alperin's favor. The award was set at $92,-378.58. Both Stateside and Speigel were held liable for the amount of the award.

After the arbitrator's decision was announced, Alperin filed documents in the district court entitled "Petition to Confirm Award" and "Notice of Application for Confirmation of Award." These matters were consolidated by order of the district court and will be referred to collectively as the petition. Service of the petition on both Stateside and Speigel was made by sending a copy of the petition to Stateside's attorney. Stateside and Speigel moved to dismiss or modify the petition, alleging, *inter alia*, that service of the petition was deficient as to both parties and that the controversy was not arbitrable because the arbitration clause did not cover claims of fraudulent inducement to enter the contract. The district court ruled on July 30, 1976 that service to Stateside through its attorney was proper but that service to Speigel through Stateside's attorney was not.[5] The court concluded that service in-

---

4. In an opinion by Judge Gibbons, the Court held that a district court order preliminarily denying a stay of arbitration proceedings is not an appealable order under either 28 U.S.C. § 1291 or *id.* § 1292(a)(1). *See* 526 F.2d at 482, 484.

5. The lower court found that Alperin's petition and Stateside's earlier suit against Alperin for breach of contract were both brought to determine the parties' rights and liabilities under the same contract, and thus concluded that both were part of the same proceeding. The court treated the petition as a motion. Because Stateside was already before the court by virtue of its breach of contract suit, the court held that service to it through its attorney was prop-

stead should be made directly to Speigel in accordance with the Pennsylvania "long-arm" statute.[6] Because the court considered that it lacked in personam jurisdiction over Speigel, it deferred consideration of the merits of Speigel's and Stateside's contention that the dispute was not arbitrable.

In order to comply with the district court's ruling regarding service on Speigel and with the Pennsylvania long-arm statute, Alperin's counsel directed the United States marshal to:

Send by registered or certified mail, postage prepaid, a true and attested copy of within Petition to Confirm Award, with fee required by law, to Department of State, Harrisburg, Pennsylvania, as service in accordance with the provisions of the Pennsylvania Long-Arm Statute, 42 P.S. 8304 et seq. and send to defendant, Armin Speigel, by registered or certified mail, postage prepaid, a true and attested

copy thereof, with endorsement thereon upon the Department of State, addressed to Mr. Speigel at his last known address, to wit, 23 Goodge St., London W.1, England.

The United States marshal's Service Process Receipt and Return Document (Document) indicates that the marshal served the Secretary of the Commonwealth of Pennsylvania with the petition by certified and registered mail and served Speigel by registered mail. The Secretary accepted service on August 20, 1976. The Document indicates that "[s]ervice upon Armin Speigel [was] returned unclaimed."

Subsequently, the district court[7] heard argument during June and July of 1977. On December 23, 1977 the court held that service to Speigel was proper under the Pennsylvania long-arm statute, and that the dispute between the parties was governed by the contract's arbitration clause.

---

er under Fed.R.Civ.Pro. 5(b), which governs service of motions. Speigel, however, was not a party to the contract action. As a result, the court held that it lacked personal jurisdiction over him. It suggested, however, that Speigel had sufficient contacts with the Commonwealth of Pennsylvania that service to Speigel properly could be effected under the Pennsylvania long-arm statute.

6. Neither Stateside nor Speigel challenges in this appeal the district court's conclusion that Speigel was doing business in Pennsylvania. At the time of the district court's ruling and at all times relevant to this case, jurisdiction over non-residents of Pennsylvania doing business in Pennsylvania was governed by 42 Pa.Cons. Stat.Ann. § 8304 (Purdon Supp.1978), *repealed by* Judiciary Act Repealer Act of 1978, Act 1978, April 28, P.L. 202, No. 53, § 2(c), (f), and 42 Pa.Cons.Stat.Ann. § 8309 (Purdon Supp. 1978), *repealed by* Judiciary Act Repealer Act of 1978, Act 1978, April 28, P.L. 202, No. 53, § 2(c), (f). Service of process to non-residents doing business in Pennsylvania as determined by sections 8304 and 8309 was governed by 42 Pa.Cons.Stat.Ann. § 8307 (Purdon Supp.1978), *repealed by* Judiciary Act Repealer Act of 1978, Act 1978, April 28, P.L. 202, No. 53, § 2(c), (f). Section 8307 stated:

§ 8307. Procedure for service of process Process directed to persons under this chapter shall be served, by the officer to whom such process shall be directed, upon the Department of State, by sending by regis-

tered or certified mail, postage prepaid, a true and attested copy of such process, with the fee required by law, and by sending to the defendant, by registered or certified mail, postage prepaid, a true and attested copy thereof, with an endorsement thereon of the service upon the Department of State, addressed to such defendant at his last known address. The Department of State shall keep a record of the day and hour of the service of such process on it. The registered or certified mail return receipts of the Department of State and of such defendant shall be attached to and made a part of the return of service of such process, except that if the defendant refuses to accept the notice mailed, or cannot be found at his last known address, the registered or certified mail return receipt or other evidence of such facts shall be attached to and made a part of the return and shall constitute sufficient service under the provisions of this section. The fee paid by the plaintiff to the Department of State at the time of the service shall be taxed as costs to the plaintiff, if he prevails in the action necessitating the service of the process.

7. The Hon. R. Dixon Herman, United States District Judge, Middle District of Pennsylvania. Judge Herman was assigned the case after the death of the Hon. Michael H. Sheridan, Chief United States District Judge, Middle District of Pennsylvania, who wrote the July 30, 1976 opinion.

The court then ordered that judgment be entered against Stateside and Speigel in the amount of the arbitration award. Stateside and Speigel brought this appeal. We affirm.

## DISCUSSION

On appeal, Stateside and Speigel raise two distinct issues. First, they contend that the arbitration clause of the contract, which states that the contract "in a case of any unresolved issues will be subject to binding arbitration", did not contemplate arbitration of claims of fraud in the inducement of the entire contract. Since in determining whether appellants breached the contract the arbitration panel was required to decide whether Alperin fraudulently induced them into entering the contract, appellants insist that the entire controversy was outside of the panel's jurisdiction. Second, they claim that even if the arbitration provision did govern the dispute, Speigel was not properly served with Alperin's petition under 42 Pa.Cons.Stat.Ann. § 8307.[8]

### A. Arbitrability

Our inquiry into the arbitrability of a dispute involving fraud in the inducement of an entire contract begins with two cases, *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and *Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission*, 387 F.2d 768 (3d Cir. 1967). *Prima Paint* involved a petition by a defendant in a rescission of contract suit brought in district court to stay the district court action pending arbitration of the dispute between the parties. The plaintiff contended that the suit should proceed in district court on the ground that the controversy—whether defendant had fraudulently induced it to enter the contract—was not arbitrable. The Supreme Court, however, rejected the plaintiff's assertion. The Court noted that plaintiff did not claim that it was fraudulently induced into agreeing to the arbitration clause of the contract in

particular, but rather, that a fraud had led it to enter into the contract generally. This distinction, in the Court's view, was critical. Under section 4 of the United States Arbitration Act, 9 U.S.C. § 4 (1976), a federal court is required to direct the parties to proceed to arbitration as long as it is "satisfied that *the making of the agreement for arbitration* or the failure to comply therewith *is not in issue*." *Id.* (emphasis added). In contrast, the Act contains no provisions making arbitration contingent on a judicial finding that the "making of the agreement" *in general* is not in controversy.

Relying on the language of section 4, the Court held:

> Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "making" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

388 U.S. at 403–04, 87 S.Ct. at 1806 (footnote omitted).

This Court interpreted *Prima Paint* in *Merritt-Chapman*. There, we held:

> The question [whether a claim of fraud in the inducement of the contract generally must be decided by a court because it is not arbitrable] has been put to rest in federal law by . . . *Prima Paint* . . . . The Supreme Court there held under the United States Arbitration Act of 1925 that a general attack on a contract for fraud is to be decided under the applicable arbitration provision as a severable part of the contract and that only where the claim of fraud in the inducement goes specifically to the arbitration provision itself should it be adjudicated by the court rather than the arbitrator.

387 F.2d at 771 (footnote omitted).

■ Appellants do not purport to attack the reasoning of *Prima Paint* and *Merritt-*

---

**8.** Since there are indications in the record that Stateside may be insolvent, *see* Appendix at

123, whether or not Speigel was properly served is vital to Alperin as a practical matter.

*Chapman*.[9] Instead, they argue that the Arbitration Act only prevents a party from contending that a conflict over whether there was fraud in the inducement of an entire contract is outside the scope of an arbitration provision *as a matter of law*. If, however, a party can demonstrate *as a matter of fact* that a particular arbitration clause was not intended to encompass fraud in the inducement, then, according to appellants, arbitration would not be appropriate. Appellants assert as support for their theory the opening line in the majority opinion in *Prima Paint*, which states:

This case presents the question whether the federal court or an arbitrator is to resolve a claim of "fraud in the inducement," under a contract governed by the United States Arbitration Act of 1925, *where there is no evidence that the contracting parties intended to withhold that issue from arbitration.*

388 U.S. at 396–97, 87 S.Ct. at 1802 (emphasis added). Thus, appellants read *Prima Paint* as permitting evidence to be introduced in the district court that the parties to the contract did not in fact intend the arbitration clause to cover claims of fraud in the inducement of the contract generally.

■ Assuming *arguendo* that the Arbitration Act and *Prima Paint* do permit a court to consider evidence that arbitration of such claims was not intended by the parties, we rule that appellants have failed to satisfy their heavy burden of proving an intent not to arbitrate. The contract provides that "in a case of any unresolved issues" there will be binding arbitration. Appellants claim that this phrase refers to issues unresolved at the time the parties entered into the contract. They contend

9. Nor do appellants question whether the United States Arbitration Act, on which *Prima Paint* is based, is applicable to this case. Whether we may apply the federal act to this dispute, though, is not an easy question. Section 2 of the Arbitration Act provides that the Act applies only to maritime transactions or contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2; *see Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956). Unless the contract between appellants and Alperin involved interstate commerce, the provisions of the Act are inapplicable to this case. *See id.* at 200–01, 76 S.Ct. 273. There is no indication in the record, however, of an *explicit* finding by the district court that the contract did involve commerce. On occasion in the past, this Court has been unwilling to make a factual finding that a transaction was in interstate commerce in the context of the Arbitration Act in the absence of a district court finding to that effect. *See Gavlik Const. Co. v. H. F. Campbell Co.*, 526 F.2d 777, 784 (3d Cir. 1975); *Merritt-Chapman*, 387 F.2d at 772. However, we find those cases to be distinguishable, and conclude that under all the circumstances of this case, we are able to decide whether the Stateside-Alperin contract involved commerce. Alperin invoked the Arbitration Act in both his motion to stay Stateside's suit pending arbitration and his petition to confirm the arbitration award. In his brief in support of his motion to stay, he specifically asserted that his transaction with Stateside involved foreign commerce. Thus, the district court was squarely presented with the question whether the federal act applied. Although neither the 1976 nor 1977 district court opinion dealt directly with the issue of com-

merce—perhaps because Alperin's assertion that federal law applied was never disputed by Stateside—both opinions refer exclusively to the Arbitration Act and to federal law. Thus, clearly implicit in the district court decisions is the finding that the Arbitration Act governed and, necessarily, that the transaction contemplated by the Stateside-Alperin contract was one "involving commerce." By contrast, in *Gavlik*, the district court specifically refused to determine whether the disputed contract involved commerce. *See* 389 F.Supp. 551, 553 (W.D.Pa.1975). And in *Merritt-Chapman*, the pleadings by the parties relied exclusively on diversity jurisdiction, *see* 387 F.2d at 772, so that the question of jurisdiction under the Arbitration Act was not even presented to the district court.

Proceeding to the merits of the "commerce" issue, we have no trouble in upholding the district court's implicit conclusion that the transaction underlying the contract was one "involving commerce." The contract was for the sale of foreign patent rights by a Pennsylvania citizen to a foreign corporation. As the Fourth Circuit has held in the context of a corporation: "A contract made by an American corporation with a foreign one upon which it remains liable, and of which it is in fact both an essential party and the real beneficiary involves commerce with a foreign country." *Reynolds Jamaica Mines v. La Societe Navale Caennaise*, 239 F.2d 689, 693 (4th Cir. 1956); *see Weight Watchers of Quebec Ltd. v. Weight Watchers International, Inc.*, 398 F.Supp. 1057, 1058 (E.D.N.Y.1975). *See generally Prima Paint*, 388 U.S. at 401 n.7, 87 S.Ct. 1801.

that fraudulent inducement "did not become an issue at all until after the contract was signed; moreover, it was not an issue that was left unresolved during the negotiations leading to the contract." Brief for Appellants at 11–12. Appellants' interpretation of the parties' intent is not implausible. Appellants do not provide us, however, with anything more tangible in support of their interpretation than some merely conclusory language in their brief, *see id.* In addition, their interpretation is by no means the only reasonable explanation of the language in the arbitration clause. The phrase "any unresolved issues" is extremely broad; it can easily be read to encompass all issues about which the parties disagree at any time during the life of the contract. Thus, for appellants, this is at best a close case.

However, under the Arbitration Act, there is a "liberal policy of promoting arbitration." *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 410 (2d Cir. 1959), *cert. dismissed*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). *Accord, Aberthaw Construction Co. v. Centre County Hospital*, 366 F.Supp. 513, 514 (M.D.Pa.1973), *aff'd*, 503 F.2d 1398 (3d Cir. 1974). *See generally Prima Paint*, 388 U.S. at 404, 87 S.Ct. 1901. Because of that policy, it has been held that there is a "federal rule that seemingly requires a clearly expressed intent *not* to arbitrate an issue before such issue can be ruled one for judicial determination; and, further, that if the issue is a doubtful one, the doubt is to be resolved in favor of arbitration." *Singer Co. v. Tappan Co.*, 403 F.Supp. 322, 329 (D.N.J.1975) (emphasis in the original), *aff'd*, 544 F.2d 513 (3d Cir. 1976).

We do not reach in deciding this case the issue addressed in *Singer* of whether parties to a contract must explicitly state that the arbitration clause does not cover general fraud in the inducement claims in order to avoid coming within the Arbitra-

tion Act. We do rule, however, that doubtful issues regarding the applicability of an arbitration clause are to be decided in favor of arbitration. As a result, we are compelled to hold that the controversy between appellants and Alperin at the core of this appeal is arbitrable.[10]

### B. *Service of Process to Speigel*

The then applicable [11] Pennsylvania long-arm service of process statute, 42 Pa.Cons. Stat.Ann. § 8307, required the signed registered or certified mail return receipt of a party served with process to "be attached to and made a part of the return of service of such process" unless that person "refuses to accept the notice mailed or cannot be found at his last known address." The U.S. marshal's service return Document stated that "[s]ervice upon Armin Speigel [was] returned *unclaimed*" (emphasis added).

Appellants contend that service upon Speigel was invalid under section 8307 because, under that section, an "unclaimed" service is not the same thing as a "refused" service. They argue that the exception to the signed return requirement which takes effect when service is "refused" is designed to prevent an intended recipient from deliberately evading service. But, they claim, there is no evidence that Speigel intentionally did anything to avoid receipt of process.

In attempting to distinguish "refused" service from "unclaimed" service, we think appellants ignore the precise language and obvious purpose of 42 Pa.Cons. Stat.Ann. § 8307. Section 8307 states that proof on the return of service form that the party being served received the process is unnecessary not only when that party "refuses to accept the notice mailed," *id.*, but also when he "cannot be found at his last known address." *Id.* The Pennsylvania legislature's use of the "cannot be found" phrase—which carries no connotation of deliberate refusal to accept proc-

---

10. The presumption of arbitrability, and the result of this case, would be the same even if the federal act did not apply. *See Hussey Metal Division v. Lectromelt Furnace Division*, 471 F.2d 556, 558 (3d Cir. 1973); *Merritt-Chapman,*

387 F.2d at 771. *See generally Mendelson v. Shrager*, 432 Pa. 383, 248 A.2d 234 (1968).

11. *See* note 6 *supra*.

ess—is a clear indication to us that, contrary to appellants'·claim, actual receipt of process is in some situations unnecessary even when the party being served did not affirmatively attempt to avoid service.

■ In our view, section 8307 was designed to insure merely that service of process be "reasonably calculated", *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940), to notify a party that judicial proceedings will take place in which he may have an interest. Ordinarily, sending process to a person's last known address by certified or registered mail guarantees that the person will receive the process. Thus, delivery by certified or registered mail is an efficient notice-providing mechanism. The drafters of the statute realized however, that in certain circumstances, even delivery by certified mail will not result in the intended recipient actually obtaining the papers sent to him. The recipient may have been at home but deliberately refused service. Alternatively, he may not have been found at his last known address, either because he had moved and left no forwarding address, because he was out of town on vacation or business, or for various other reasons. Since the legislature did not intend for service to be invalidated in those circumstances in which a party follows section 8307's requirement of certified or registered mailing but nevertheless fails to receive a signed return receipt from the person served, the statute specifically provides that service in such circumstances is proper. *Id.; see Action Industries Inc. v.·Wiedeman*, 236 Pa.Super. 447, 346 A.2d 798, 804 n.11 (1975).

■ In this case, Speigel admitted in his answer to Alperin's petition that he resided at 23 Goodge Street, London, W.1, England.

The Goodge Street address was the one to which the U.S. Marshal mailed the process. Thus, if Speigel failed to receive the process, it had to be either because he "refused" to accept it [12] or because, for one reason or another, he could "not be found at his last known address," i. e., 23 Goodge Street. In either event, 42 Pa.Cons.Stat.Ann. § 8307 explicitly provides that service is valid even without a return receipt signed by Speigel.[13]

■ Finally, appellants argue that even if service to Speigel was proper under the statute, the failure of Speigel to receive service in this case violated the due process clause of the fourteenth amendment. Appellants' claim appears to be that Alperin did not use the means best calculated to apprise Speigel of his petition. They state that Alperin had previously employed British counsel and suggest that Alperin should have contacted counsel to aid him in serving Speigel when the registered mail approach was unsuccessful.

■ We find no merit to this claim. Whether a method of service of process accords an intended recipient with due process depends on "whether or not the form of . . . service [used] is *reasonably calculated* to give him actual notice of the proceedings and an opportunity to be heard." *Milliken*, 311 U.S. at 463, 61 S.Ct. at 343 (emphasis added); *see Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950). As long as a method of service is reasonably certain to notify a person, the fact that the person nevertheless fails to receive process does not invalidate the service on due process grounds. In this case, Alperin attempted to deliver process by registered mail to defendant's last known address. That pro-

12. The record is barren as to the meaning of the phrase "unclaimed." Though we do not attempt in this opinion to determine what the writer of the phrase intended it to mean, it is not inconceivable that "unclaimed" was used to indicate that Speigel refused to claim the process.

13. Appellants introduced no evidence to suggest that the British Postal Service did not

attempt to notify Speigel that the Post Office held registered mail addressed to him. Since it would be their burden to come forward with such evidence, *Cameron Estate*, 388 Pa. 25, 35, 130 A.2d 173 (1957); *see Meierdierck v. Miller*, 394 Pa. 484, 487, 147 A.2d 406 (1959), we need not consider whether service would comply with 42 Pa.Cons.Stat.Ann. § 8307 in those circumstances.

cedure is a highly reliable means of providing notice of pending legal proceedings to an adverse party. That Speigel nevertheless failed to receive service is irrelevant as a matter of constitutional law. *See McCully-Smith Assoc. v. Armour & Co.*, 358 F.Supp. 331, 333 (W.D.Pa.1973); *Wiedeman*, 346 A.2d at 804 n.171.

## CONCLUSION

Because the controversy between appellants and Alperin was arbitrable, and because Speigel was properly served with Alperin's petition, the order of the district court granting Alperin's petition and entering judgment against both Stateside and Speigel will be affirmed.