**H. T. ELSE, Plaintiff,**

v.

**INFLIGHT CINEMA INTERNATIONAL, INC., a corporation, and Inflight Services, Inc., a corporation, Defendants.**

**Civ. A. No. 77–470.**

United States District Court,
W. D. Pennsylvania.

Feb. 28, 1979.

Donald L. Very, Tucker, Arensberg & Ferguson, Pittsburgh, Pa., for plaintiff.

John E. Grasberger, Litman, Litman, Harris & Specter, Pittsburgh, Pa., for defendants.

## OPINION

COHILL, District Judge.

The plaintiff, a Pennsylvania resident, entered into a contract in 1975 with the defendant, Inflight Cinema International, Inc. ("ICI"), a New York corporation with major offices in New York and Los Angeles, under which he was to be the exclusive

distributor of feature films for closed circuit showings in hotels and motels in the Pittsburgh area. The availability of franchises had been advertised in "The Pittsburgh Press" and the "Wall Street Journal." After plaintiff responded to these advertisements he received materials by mail from ICI, and a representative of ICI visited plaintiff at his home in Pittsburgh. The plaintiff later went to ICI's Los Angeles offices where the contract (a "Distributor's License Agreement") was signed; thereafter, he received demonstration equipment and promotional material which were sent to his home and another ICI representative came to Pittsburgh to train him in his new business venture.

This diversity action subsequently ensued. Plaintiff brought his complaint in three counts against ICI and against its parent corporation, Inflight Services ("Inflight"), a Delaware corporation. Count one alleges that the defendants induced the plaintiff to purchase a franchise in violation of the California Franchise Investment Law; count two alleges fraudulent misrepresentation; count three is a claim for punitive damages. Both defendants were served pursuant to Pennsylvania's long-arm statute as authorized by Federal Rule of Civil Procedure 4(d)(7). Both have filed motions to dismiss pursuant to Rule 12(b).

ICI moves to dismiss for lack of personal jurisdiction over it under the long-arm statute and for lack of subject matter jurisdiction over a contractual dispute where remedies provided in the contract have not been pursued. Inflight has joined in these two assertions and further contends that the plaintiff has failed to state a claim against it upon which relief can be granted under counts two and three.

## I.

### Failure to State a Claim

We will first discuss whether plaintiff has stated a claim against Inflight before reviewing the jurisdictional question. Inflight argues that counts two and three—the misrepresentation claim and the claim for punitive damages—fail to state a claim against it because there is no allegation that Inflight is the alter ego of ICI. We disagree. Paragraph 13 of the plaintiff's complaint alleges that Inflight directly controlled ICI and that it had or should have had direct knowledge of the facts on which this complaint was grounded.

Although a parent corporation is not generally liable for the acts of its subsidiary, it may become liable where the subsidiary acts as its "mere instrumentality." *Fanfan v. Berwind Corp.*, 362 F.Supp. 793, 795 (E.D.Pa.1973); *Whayne v. Transportation Management Service*, 252 F.Supp. 573, 577 (E.D.Pa.1966), aff'd, 397 F.2d 287 (3d Cir. 1968), cert. denied, 393 U.S. 978, 89 S.Ct. 445, 21 L.Ed.2d 438 (1968). Whether the subsidiary acted as an instrumentality of its parent is a question of fact on which the plaintiff should be allowed to offer proof. Unless it appears to be a certainty that the plaintiff would not be entitled to relief under any state of facts offered in support of his claims, he must be allowed to go forward with his proof. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); 2A Moore's Federal Practice § 12.-08. Therefore, Inflight's motion to dismiss counts 2 and 3 for failure to state a claim will be denied.

## II.

### Personal Jurisdiction

Both ICI and Inflight contest the personal jurisdiction of this court, asserting that the reach of the Pennsylvania long-arm statute, 42 Pa.C.S.A. § 8301 *et seq.*[1], can not extend to them consistent with due process. The Pennsylvania statute confers

---

1. The Pennsylvania long-arm statute was superseded by the Uniform Interstate and International Procedure Act, 42 Pa. C.S.A. § 5321 *et seq.* (1975 Pamphlet—Part 1), effective June 27, 1978. The successor act did not affect matters pending on its effective date, see § 8 of Act 1976, July 9, P.L. 586, No. 142; therefore, this case is governed by the long-arm statute and cases thereunder.

jurisdiction over non-qualified foreign corporations which "shall have done any business" in Pennsylvania. 42 Pa.C.S.A. § 8309(a). In addition to specific examples of doing business in § 8309(a), including "the doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts," § 8309(b) provides that "jurisdiction . . . shall extend to all foreign corporations and the powers exercised by them to the fullest extent allowed under the Constitution of the United States." ICI advertised in Pennsylvania, sent representatives to the state for bargaining and training purposes, entered into distributorship agreements with Pennsylvania residents, and shipped merchandise into Pennsylvania. Clearly, these acts constitute doing business under § 8309(a) and (b). *See Impaco, Inc. v. McDonald's Corp.*, 413 F.Supp. 415 (E.D.Pa.1976).

The Third Circuit has recently set forth the criteria for determining whether jurisdiction over out-of-state defendants is constitutionally permissible. In *Empire Abrasive Corp. v. H. H. Watson, Inc.*, 567 F.2d 554 (3d Cir. 1977), the Court recognized two tests:

> "First, out of respect for values of federalism, the due process clause was held to forbid a state to exercise its adjudicatory authority in a manner that would encroach upon the authority of a sister state. A state must have some palpable interest—rationally connected with public policy—in adjudicating a dispute within its borders for jurisdiction to be lawfully acquired.

> .     .     .     .     .

> The second jurisdictional limitation . . . focuses upon the parties and the burdens associated with litigating in a particular forum. This limitation . . . prevents a state of a plaintiff's choosing from coercing defense of a suit in a forum, which, because of its remoteness from defendant's residence and from witnesses and proof, would be fundamentally unfair."

Under these criteria, jurisdiction is clearly within due process as to defendant ICI. The state's interest in protecting its citizens from injuries caused by out-of-state defendants is a legitimate interest which normally does not encroach on another state's authority. By soliciting business in Pennsylvania and by executing contracts whereunder franchises were to operate in Pennsylvania, defendant ICI invoked the benefits and protections of Pennsylvania laws. The only significant out-of-state contact was the signing of the contract in California. Since the injury, and therefore the tort claim, *Action Industries, Inc. v. Wiedeman*, 346 A.2d 798, 808 (1975); *Gorso v. Bell Equipment Corp.*, 476 F.2d 1216 (3d Cir. 1973), arose in Pennsylvania, since the contract was solicited here and was to be substantially performed here, since the alleged harm occurred in Pennsylvania and was allegedly suffered by a Pennsylvania resident, Pennsylvania has an interest in this litigation superior to that of any other forum.

Admittedly, it may be inconvenient for ICI to travel here to defend this suit. However, when balanced against the reasons the suit should be heard here, the inconvenience to the defendant surely does not amount to "fundamental unfair[ness]" under the Third Circuit test or violate the " 'traditional notions of fair play and substantial justice' " articulated by the Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The defendant who conducts business in a remote forum must be amenable to suit there. Because ICI's contacts with Pennsylvania fall within the terms of the long arm statute and are consistent with due process, its motion to dismiss for lack of personal jurisdiction will be denied.

■ Inflight claims it stands in a slightly different posture than ICI as a parent corporation with no actual contacts with the plaintiff. Although Inflight acknowledges that ICI is its subsidiary, this mere relationship is not enough to confer jurisdiction over Inflight. *Young v. Albert Pick Hotels*, 126 U.S.App.D.C. 155, 375 F.2d 331 (1967);

*Smeltzer v. Deere and Co.*, 252 F.Supp. 552 (W.D.Pa.1966). The subsidiary which is doing business must be acting as the agent of the parent or the parent must exercise such control over the subsidiary as to make them one entity. *See* 2 Moore's Fed. Practice ¶ 4.25[6]; *contra, id.* n. 39 (no due process impediment to jurisdiction based on parent-subsidiary relationship alone). Additionally, the parent corporation may have such substantial, independent contacts with the forum state that jurisdiction is appropriate based on its own contacts. *Impaco, supra.*

■ Here, plaintiff has alleged that Inflight controlled ICI. Plaintiff also argues that Inflight's own contacts with Pennsylvania are sufficient to subject it to suit here. Its answers to plaintiff's interrogatories show that its estimated gross revenue from providing films to airlines arriving at and departing from Pennsylvania cities for the fiscal years ending in 1976 and 1977 was over one million dollars. It had nine employees stationed at the Philadelphia airport from 1974 to 1977. Further, it had direct film supply arrangements with three Pennsylvania motels prior to the time ICI was organized in 1975. Although the cause of action did not arise out of these independent contracts, jurisdiction may be proper if these contacts are such that we can say "the defendant [has] purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denkla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). For both these reasons—(i) allegations of an agency relationship between the two defendants and (ii) the defendant Inflight's substantial independent business operations in Pennsylvania—we believe jurisdiction over Inflight is proper.

The same due process analysis applied to ICI is appropriate to Inflight. Principles of federalism are not violated where the dispute arose primarily in this district, and Inflight is a party to that dispute. Further, we cannot find Inflight inconvenienced where it conducts other, substantial business in this state.

For all the reasons set forth above, the defendants' motions to dismiss for lack of personal jurisdiction will be denied.

### III.

### *Subject Matter Jurisdiction*

Both defendants assert that this Court lacks subject matter jurisdiction because the Distributor's License Agreement between ICI and plaintiff includes an arbitration clause. This clause provides:

> "In the event of any dispute or controversy arising hereunder, such dispute or controversy shall be submitted to arbitration in the City of New York under the rules then obtaining of the American Arbitration Association. Judgment upon any award in such arbitration procedure may be entered in any court of competent jurisdiction." Complaint, Exhibit A.

The existence of this arbitration clause raises four issues: (1) whether such clause deprives this Court of subject matter jurisdiction; (2) whether federal or state law applies; (3) whether the present dispute is covered by the clause; and, if arbitration is ordered, (4) whether this Court is precluded from granting relief subsequent to arbitration. *John Ashe Associates, Inc. v. Envirogenics Co.*, 425 F.Supp. 238, 240–43, (E.D. Pa.1977).

■ Recent cases involving arbitration issues have held that there is an independent basis of federal jurisdiction under 28 U.S.C. § 1332(a) where diversity of citizenship and the requisite amount in controversy are present. Thus, the arbitration clause merely limits the scope of federal review rather than depriving the district court of its constitutionally-based diversity jurisdiction. *John Ashe, supra*, at 240–41; *Warren Brothers Co. v. Community Building Co.*, 386 F.Supp. 656, 658 (M.D.N.C.1974); *cf. Litton RCS, Inc. v. Pennsylvania Turnpike Commission*, 376 F.Supp. 579, 585, 591 (E.D. Pa.1974), aff'd, 511 F.2d 1394 (3d Cir. 1975). In this case, all three parties are residents of diverse states and the amount in controversy is alleged to be greater than $10,-000.00, exclusive of interests and costs.

Therefore, federal subject matter jurisdiction is proper and the defendants' motion to dismiss will be denied.

Next, we must determine what law to apply in construing the coverage of the arbitration clause. The federal law, embodied in the Arbitration Act, 9 U.S.C. § 1 *et seq.*, extends to transactions affecting interstate commerce. Whether interstate commerce is involved is a question of fact for the district court, *Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Comm'n*, 387 F.2d 768 (3d Cir. 1967), and there can be little doubt that the transaction here involves interstate commerce. The parties apparently recognized that fact when they · agreed to submit to arbitration "under the rules then obtaining of the American Arbitration Association." Complaint, Exhibit A. Therefore, the balance of our analysis of the effect of the arbitration clause is made under federal law.[2]

■■  Whether the particular dispute before us was intended to be covered by the arbitration clause is not clear from the contractual language. As a general rule parties are required to submit to arbitration disputes which could reasonably be within the intent of the agreement. *Merritt-Chapman, supra.* The plaintiff asserts that his claims, the essence of which are misrepresentation and fraudulent inducement to enter a contract, do not fall within the category of disputes required to be arbitrated. The Court of Appeals for the Third Circuit has recently held to the contrary. In *State-side Machinery Co., Ltd. v. Alperin*, 591 F.2d 234, 236–237 (3d Cir. 1979), an issue was whether an arbitration clause stating "any unresolved issues will be subject to binding arbitration by the American Board of Arbitration" covered a claim for fraudulent inducement to enter the contract. The Court, after reviewing precedent and noting the liberal policy favoring arbitration under the Arbitration Act, decided that it did. *Id.* at 239–240. Admittedly, the language of the clause in *Alperin* —"any unre-

solved issues"—is broader than the language under consideration here. "Arising under" might arguably be construed to limit arbitrable issues to those arising after contract formation.

However, we find that the federal policy of promoting arbitration requires us to resolve the matter in favor of inclusion. In *Alperin, supra* at 240, the Court ruled "doubtful issues regarding the applicability of an arbitration clause are to be decided in favor of arbitration." In an earlier case, *Hussey Metal Division v. Lectromelt Furnace Division*, 471 F.2d 556, 557–58 (3d Cir. 1972), the Court wrote that disputes are to be resolved in favor of arbitration unless a court can state with "positive assurance" that the dispute was not meant to be arbitrated. We cannot say with any real assurance that the claims here were *not* intended to be arbitrated, so we will order this dispute to arbitration in the forum provided by the parties in their contract.

Although the parties agreed to arbitrate in the City of New York, they did not agree to limit entry of judgment to a single forum. The Arbitration Act provides "[i]f no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9. The parties' agreement provides for entry of judgment in "any court of competent jurisdiction." Their agreement to arbitrate under the rules of the American Arbitration Association automatically incorporates such rules, *e. g., Varley v. Tarrytown Associates, Inc.*, 477 F.2d 208 (2d Cir. 1973), one of which— Rule 46(c)—provides that judgment on an arbitration award may be entered in any federal or state court having jurisdiction thereof.

Reading the Act along with the parties' agreement we find that this court would neither be precluded from entering judgment nor be the exclusive forum for entry of judgment. For these reasons, we will

---

2. However, we note that the result would be the same under Pennsylvania law which favors arbitrability as strongly as does federal law.

*See Mendelson v. Shrager*, 432 Pa. 383, 248 A.2d 234 (1968).

order the parties to arbitration in New York, and the clerk of court will be directed to mark this case closed. However, for reasons of judicial economy, we will retain jurisdiction for entry of judgment in this court, unless and until the parties to this action make application to another appropriate court for entry of judgment pursuant to 9 U.S.C. § 9.

An appropriate order will be entered.