KITTANNING COAL CO., INC. and Allen & Company Incorporated, Plaintiffs,

v.

INTERNATIONAL MINING CO., INC., Bally Coal Co., Inc., Kitt Coal Co., Inc., Arthur Coal Company, Black Diamond Sales Company, Angelina Coal Co., Inc., Pennsylvania Refrigeration Co., Inc., William K. Kerschbaumer, Edward T. McErlean, Joseph C. Ripp, Peter Fitzpatrick, John H. McCann, III, John W. Benson, Jr., and Joseph P. O'Connor, Defendants,

v.

Frank BLAIR, Robert Werbel, Herbert A. Allen, Jr., and Roland D. Crandall, Third Party Defendants.

Civ. A. No. 82–0340.

United States District Court, W.D. Pennsylvania.

Nov. 9, 1982.

Bernard D. Marcus, Daniel H. Shapira, Jeff L. Lewin, Titus, Marcus & Shapira, Pittsburgh, Pa., for plaintiffs and third party defendants.

Arnold E. Cohen, Philadelphia, Pa., for John W. Benson and Kittanning Coal Co., Inc.

Marvin Schreiber, Pittsburgh, Pa., for John W. Benson.

Steven M. Kramer, Michael R. Needle, Philadelphia, Pa., Robert Whitehill, Pittsburgh, Pa., for William K. Kerschbaumer and International Mining Co., Inc.

Michael W. Zurat, Pittsburgh, Pa., for Edward T. McErlean.

Dennis St. J. Mulvihill, Pittsburgh, Pa., Jack A. Meyerson, Philadelphia, Pa., for Black Diamond Sales Co.

## OPINION

MANSMANN, District Judge.

This matter is before the Court on three separate Motions filed by Plaintiffs seeking special orders authorizing service of process by publication upon various Defendants named in the present action. The first Motion concerns service of process upon an individual, nonresident; the second concerns four Pennsylvania corporations; and, the third concerns a business entity whose residence and exact legal nature have not been determined. Each of these Motions will be dealt with separately below; and, for the reasons set forth below, each of the Plaintiffs' Motions is granted.

\* \* \*

### I.

In this action the Plaintiffs bring their Complaint seeking treble damages and attorneys' fees under the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. § 1961 *et seq.,* and seeking damages for violations of Section 17 of the Securities Act, 15 U.S.C. § 77q(a), Section 10 of the Securities Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5.

The Plaintiffs, by their present motions, allege that they have met with difficulty in

836

their efforts to locate and serve certain of the named Defendants with process. Therefore, they are requesting that this Court authorize "service of process upon these Defendants by publication to the extent that they have not already been served with process."

The Plaintiffs base the requests for substitute service on the provisions of Rules 2079(c)(5) and 2180(d) of the Pennsylvania Rules of Civil Procedure, as applicable pursuant to the Federal Rules of Civil Procedure.[1] In essence, the operative language of both rules is that the court may authorize the manner of service by "special order." However, neither rule affords explicit guidance as to the acceptable methods of providing substitute service thereunder. And, we have noted no instance of the application of these provisions by the Pennsylvania courts. We turn first to the question of whether publication is a permissible manner of effectuating substitute service of process under Pennsylvania law.

One lower Pennsylvania court's treatment of a notice by publication situation under an earlier Pennsylvania service of process statute is helpful. In *Spaar v. Spaar,* 94 Montg.Co.L.R. 73 (1971), the court disallowed service attempted by publication stating that "(p)ublication is only used as a matter of necessity . . . in order to acquire jurisdiction over the defendant." Further, the court intimated that as a premise to the resort to publication "the plaintiff must act in good faith in ascertaining the defendant's whereabouts . . . and that all specific requirements of the statute are complied with."

As to the due process aspects incorporated into service of process statutes we find the case of *Stateside Machinery Co., Ltd. v. Alperin,* 591 F.2d 234, 241 (3d Cir.1979) to be on point. There the court, in construing the then-applicable Pennsylvania long-arm statute, determined the validity of the substituted service attempted in that litigation by the following test: whether a method of service of process accords the intended recipient with due process depends on "whether or not the form of the service used is reasonably calculated to give actual notice of the proceedings and an opportunity to be heard," citing *Milliken v. Meyer,* 311 U.S. 457 at 463, 61 S.Ct. 339 at 343, 85 L.Ed. 278 and *Mullane v. Central Hanover Bank,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865.

■ Thus it seems that the probable posture of Pennsylvania law as to this issue may be discerned. It is that publication is a permissible method of providing an unlocated, defendant with substitute service of process whenever other *good faith efforts* to effectuate the service by more direct means have failed *and* the intended publication is *reasonably calculated* to notify such person(s) of the proceedings against him. Stated differently, before the plaintiff can justifiably move for a substitute manner of service he must first present a good faith effort to locate the other party in order to provide him with a more direct manner of service;[2] and, thereupon, he must prove to the satisfaction of the court, in light of the particulars of the situation, that the pro-

1. The pertinent provisions of the Pennsylvania Rules of Civil Procedure provide:
   § 2079 Service of Process
   (c) outside the Commonwealth the Plaintiff shall have the right of service . . .
   (5) in such manner as the court by special order shall direct.
   § 2180 Service of Process
   (d) if service cannot be made under any provision of (this rule on a corporation), the court . . . may authorize by special order the manner of service.
   Rules 2079(c)(5) and 2180(d), as presently promulgated, became effective June 11, 1979 and January 5, 1980, respectively.

2. As to the determination of what activities might constitute or show "a good faith effort to locate the other party" in substitute service situations under the Pennsylvania Rules of Civil Procedure it seems that the specific illustrations of such, as provided by Pa.R.Civ.P. 2079(d) may be considered in *pari materia* with the method requested by the Plaintiffs in the instant case. Pa.R.Civ.P. 131. These include:
   1. inquiries of postal authorities;
   2. inquiries of relatives, friends, neighbors and employer;
   3. examination of local telephone directories, voter registration records, local tax records and motor vehicle records.

posed manner of substitute service is reasonably certain to give the unlocated party a fair opportunity to learn of the proceedings against him.

With the foregoing analysis in mind we move to an examination of each motion under the Pennsylvania Rules of Civil Procedure thereby invoked. The federal courts are bound by the Pennsylvania courts' construction of its substituted service statutes. *Phillips v. Flynn,* 61 F.R.D. 574 (E.D.Pa., 1974). However, no case authority has been noted as to the treatment of these matters by the Pennsylvania courts. Therefore, it becomes necessary and important to set out briefly the appropriate rules of construction as applied by the courts of Pennsylvania in the interpretation of its substitute service statutes.

The Pennsylvania Supreme Court has held that, as a statute authorizing substitute service is in derogation of the common law, it must be strictly construed. *McCall v. Gates,* 354 Pa. 158, 47 A.2d 211 (1946). However, the statute is to be interpreted in a manner to accord as nearly as possible with the rules existing at the time of its enactment. *March v. Philadelphia & West Chester Traction Co.,* 285 Pa. 413, 132 A. 355 (1926). It must be construed as an integral part of the whole structure affected and not as a distinct and separate matter having an independent meaning of its own. *West v. Lysle,* 302 Pa. 147, 153 A. 131 (1931); *Heaney v. Mauch Chunk Boro.,* 322 Pa. 487, 185 A. 732 (1936).

\* \* \*

## II.

### INDIVIDUAL DEFENDANT

By Motion dated June 30, 1982 the Plaintiffs indicate that they are unable to locate the individual Defendant, Joseph Ripp, ("Ripp") for the purpose of providing him with service of process. They assert that he is not a resident of Pennsylvania. Accordingly, they are requesting that this Court authorize service of process upon Ripp by publication of notice in the *Miami Herald* and *Philadelphia Inquirer* newspapers.[3] This Motion is based upon Pa.R. Civ.P. 2079(c)(5) as applicable through Fed. R.Civ.P. 4(e).

The Plaintiffs have outlined, by sworn affidavit attached to their motion, the extent of their efforts to locate Ripp. These may be summarized as follows:

1. Forwarded service by certified mail to Ripp's last known address, as of December 4, 1979: Pompano Beach, Florida. These mailings were returned by postal authorities stamped with the notation that the forwarding address had expired.

2. Obtained from the Assistant District Attorney, West Palm Beach, Florida, a more recent business address for Ripp (1981): Boca Raton, Florida. Service of process sent to that address by certified mail was returned by postal authorities with a notation that it was not forwardable.

3. Contacted telephone directory assistance for the Pompano Beach, Boca Raton and West Palm Beach areas. No Joseph Ripp could be located.[4]

Under these facts, as set forth by the Plaintiff, Fed.R.Civ.P. 4(e) specifically provides for the application of the Pennsylvania Rules of Civil Procedure. The applicable notes of the Advisory Committee on Rules make this clear, stating that Fed.R. Civ.Proc. 4(e) "expressly allows for resort in original Federal actions to the procedures provided by state (*i.e.,* Pennsylvania) law for effectuating service on non-resident

---

**3.** We note that the present motion has been altered by the Plaintiffs in their "Brief in Support of Motions...", dated August 16, 1982. First, the request as to the individual defendant Peter Fitzpatrick has been withdrawn as "moot." (Plaintiffs state that he has been personally served with process in Florida). Second, the Plaintiffs have indicated an intention to have the notice published in the *Phila-* *delphia Inquirer,* also, as Ripp is believed to have ties to that area (see subsequent discussions in conjunction with the other two motions).

**4.** This attempt to locate Ripp was not included in the Plaintiff's motion. It is set forth in the "Plaintiff's Brief In Support of Motions...".

parties (as well as domiciliaries not found within the state)."

As there is no case law to guide us in the application of the substitute service provision of the Pennsylvania Rules of Civil Procedure here invoked by the Plaintiffs, we resort to an examination of the language and origins of the rule. Our approach will accord that followed by the Pennsylvania courts when interpreting rules and statutes authorizing substituted service.

Pa.R.Civ.P. 2079(c)(5) was promulgated upon the authority of 42 Pa.Cons.Stat. § 5323 which provides the statutory basis for service of process on non-residents (*i.e.,* Pennsylvania's long-arm service procedure). The specific statutory language from which this rule derives may be set forth as follows:

> § 5323 Service of process on persons outside this Commonwealth.
>
> (a) Manner of service. When the law authorizes service of process outside this Commonwealth, the service, when reasonably calculated to give actual notice, may be made:
>
> (5) as directed by a court.[5]

This statute as enacted into the Commonwealth's Judicial Code was adopted by the Pennsylvania legislature from the Uniform Interstate and International Procedure Act, making some language changes but without affecting the substance.[6]

Therefore, in light of the lack of case law or specific legislative guidance as to when notice by publication would be appropriate under Pa.R.Civ.P. 2079(c)(5) and giving due consideration to the guidelines of statutory interpretations applicable as set out earlier, it seems appropriate to consider the commentary of the Commissioners of the Uniform Act regarding the intended use of this provision. The applicable commissioners' comment states that "Section 2.01(5) adds

flexibility by permitting the court to tailor the manner of service to meet the necessities of the particular case." Also, it should be noted that due process motions as set forth in the case of *Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940), gave rise to the "when reasonably calculated to give actual notice" language.[7] Of particular interest is the due process safeguard incorporated into this rule. In *Stateside Machinery Co., Ltd., supra,* we note that the court relied upon the same *Milliken* due process language.

Accordingly, it seems apparent that a motion for substitute service of process made under Pa.R.Civ.P. 2079(c)(5) would be approached in a mood consistent with the genesis of the rule, *i.e.* that the court should feel free to select a manner of service tailored to the necessities of the particular situation, but only so long as the method selected is deemed to be reasonably calculated to give the non-resident, non-present party an adequate and fair opportunity to learn of the proceedings against him.

■ As such, an interpretation of Pa.R. Civ.P. 2079(c)(5) in line with the traditional approach pursued by the Pennsylvania courts leads this Court to the conclusion that the present Motion for substitute service of process should be granted. Also, the facts and circumstances, as set forth in the Plaintiffs' Motion, present a situation justifying this Court's authorization of a special order for notice by publication. Plaintiffs have made the prerequisite "good faith effort" to locate the defendant; and, based upon the information presently available, publication in the stipulated newspapers is "reasonably calculated" to convey the required notice to Ripp.

As the Complaint sets out that certain of the Defendant's alleged actions took place within this District, it might be anticipated that Ripp, though unlocated, has retained

---

5. 42 Pa.Cons.Stat.Ann. § 5323(a)(5) (Purdon 1981).

6. Uniform Interstate and International Procedure Act § 2.01.
   The corresponding provisions of the Uniform Act are as follows:

2.01(a) (O)utside this state, the service, when reasonably calculated to give actual notice, may be made:
   (5) as directed by the court.

7. Uniform Interstate and International Procedure Act § 2.01.

some contacts here. Therefore, we believe that the published service of process should include notice in a newspaper of general circulation within this District. This will increase the probability of reaching Ripp with the published notice and will not unduly burden the Plaintiffs.

Therefore, based upon the above considerations, this Court authorizes service of process upon Ripp, by publication in the *Miami Herald,* the *Philadelphia Inquirer,* and a newspaper of general circulation throughout the Western District of Pennsylvania.

\* \* \*

## III.

## PENNSYLVANIA CORPORATE DEFENDANTS

By motion dated June 30, 1982, the Plaintiffs indicate that they are unable to determine the locations of the usual places of business or the identities of the officers or agents of the following corporate defendants, in order to provide them with service of process in this action:

Bally Coal Co., Inc.;

Pennsylvania Refrigeration Co., Inc.;

Angelina Coal Co., Inc.;

Black Diamond Sales Company.

Accordingly, the Plaintiffs are requesting that this Court authorize service of process upon each by publication of notice in the *Miami Herald* and *Philadelphia Inquirer* newspapers. The Plaintiffs' base this Motion upon Pa.R.Civ.P. 2180(d) as applicable through Fed.R.Civ.P. 4(d)(7).

By their Motion and sworn affidavit attached thereto, the Plaintiffs state that each of these corporate defendants is a domestic Pennsylvania corporation and that they have attempted to serve the summons and complaint upon each at the registered address as listed in their Articles of Incorporation. (See copies of the Articles of Incorporation accompanying Plaintiffs' Motion.) The results of their efforts, as outlined in the Motions may be summarized as follows:

A. Bally Coal Co., Inc. ("Bally")
   and

Pennsylvania Refrigeration Co., Inc. ("Refrigeration") Delivered service of process to the common registered address of the corporations: 229 N. Olive St., Media, PA 19063. At this address is a suite of law offices at which no one was willing to accept service of process for either corporation. However, Defendant Edward McErlean, ("McErlean") who is an attorney with a law office at that address, accepted the summons and complaint for both of these corporations when he was served with process at his home, 1328 Baltimore Pike, Media, PA 19063. (See Proof of Service.)

We note that McErlean was at one time an officer of Bally and that he incorporated both Bally and Refrigeration using his law office as the corporation's registered address. (See copies of the Articles of Incorporation and the portions of the deposition testimony of McErlean accompanying Plaintiffs' Motion.)

Refrigerations' 1978 Registry Statement filed with the Commonwealth of Pennsylvania lists Defendant Peter Fitzpatrick ("Fitzpatrick") as its treasurer. (See copy accompanying Plaintiffs' "Brief in Support of Motions ...")

McErlean has stated that Refrigeration was incorporated on behalf of Ripp. (See portions of the deposition testimony of McErlean accompanying Plaintiffs' Motion.)

B. Angelina Coal Co., Inc. ("Angelina"). Delivered service of process to the registered address of this corporation: 295 South Newton Street Road, New Square, PA 19073

Defendant John Benson ("Benson") maintains an office at this address, however, he declined to accept the summons and complaint addressed to Angelina when he was personally served with process in this action. (See Proof of Service.) We note that McErlean incorporated Angelina. (See copies of the Articles of Incorporation accompanying Plaintiffs' Motion.)

Angelina's 1979 Registry Statement filed with the Commonwealth of Pennsylvania lists Benson as its president. Certain correspondence dated in 1979 shows Ripp signing as Angelina's president. (See copies accompanying Plaintiffs' "Brief in Support of Motions...")

C. Black Diamond Sales Company ("Black Diamond".)

Delivered service of process to the registered address of this corporation: c/o Spector, Cohen, Gordon & Rosen, 1700 Market Street, Philadelphia, PA 19103. An employee of the law firm at this address accepted the summons and complaint addressed to Black Diamond. (See Proof of Service.)

We note that Spector, Cohen, Hunt & Rosen, P.C. incorporated Black Diamond. (See copies of the articles of incorporation accompanying Plaintiffs' Motion.)

Black Diamond's 1979 Registry Statement filed with the Commonwealth of Pennsylvania lists McErlean as its treasurer and secretary.

Under these facts, as set forth by the Plaintiff, Fed.R.Civ.P. 4(d)(7) permits "service to be made in the manner prescribed by the law of the state." As such, it is appropriate for the Plaintiffs to invoke the Pennsylvania Rules of Civil Procedure for effectuating the necessary service upon these corporate defendants. Specifically, the Plaintiffs base their request for substitute service of process by publication upon Pa.R.Civ.P. 2180(d).

As we find no case law defining the approach of the Pennsylvania courts under this provision resort is made to examination of the language of the rule. Again, we must decide its applicability under the present facts giving effect to the approach used by the Pennsylvania courts when interpreting such rules authorizing substituted service.

Pa.R.Civ.P. 2180(d) states, that, "(i)f service cannot be made under any provision of subdivision (a) ...,[8] the court on petition stating the reasons why such service cannot be made may authorize by special order the manner of service." Here, the Plaintiffs' Motion presents the extent of their unfruitful efforts to locate the officers, agents and offices of these defendant corporations. These facts and circumstances show that they have made an adequate attempt to provide service in the manner prescribed by subdivision (a) of Pa.R.Civ.P. 2180. Therefore, the applicability of Pa.R.Civ.P. 2180(d) designating the court to "authorize the manner of service by special order" is appropriate. This result is reinforced by the Explanatory Note accompanying the rule. There, by example, the Committee puts forth a situation analogous to the present and states that under these circumstances this rule will operate to permit "service by such means as the court in its discretion may deem appropriate."

As such, an interpretation of Pa.R.Civ.P. 2081(a) in line with the traditional approach of the Pennsylvania courts (i.e., strictly construed but in integral accord with the rules existing at the time of its enactment) allows the present Motion for substitute service of process to be granted. Also, the facts and circumstances justify a special order for notice by publication. Plaintiffs have made the prerequisite good faith effort to provide each corporation with service of process by more direct means and, based upon the information presented, publication in the designated newspapers appears reasonably calculated to convey the necessary notice to the defendant corporations here involved.

Therefore, based upon the above considerations, this Court authorizes service of process to be made upon these Pennsylvania

---

8. In pertinent part, Pa.R.Civ.P. 2180(a) provides:

(a) Service of process ... shall be made upon a corporation...

(1) to an executive officer ... or trustee of the corporation ...; or

(2) to an agent or person for the time being in charge of, and only at, any office or usual place of business of the corporation ...; or

(3) to an agent authorized by the corporation ... to receive service of process for it.

corporate defendants by publication in the *Miami Herald,* the *Philadelphia Inquirer,* and a newspaper of general circulation through the Western District of Pennsylvania.[9]

\* \* \*

### ARTHUR COAL COMPANY

By Motion dated July 29, 1982 the Plaintiffs state that they are unable to locate the named Defendant Arthur Coal Company ("Arthur") for the purpose of providing it with service of process. Again they request that this Court authorize service of process by publication of notice in the *Miami Herald* and *Philadelphia Inquirer* newspapers. As the Plaintiffs are unsure of the exact legal nature of Arthur, they base their Motion upon Pa.R.Civ.P. 2079(c)(5) or 2180(d) as applicable through Fed.R.Civ.P. 4(e) and 4(d), respectively. They allege alternatively that Arthur "is a corporation, a partnership, or perhaps a fictitious name under which Ripp (See "Individual Defendant," *supra.*) has transacted business."

The Plaintiffs contend that the only known address for Arthur is that contained on a check issued by Arthur to Plaintiff Kittanning Coal Co., Inc., dated May 23, 1979. (See copy of the check accompanying Plaintiffs' Motion.) The account upon which this check had been drawn is closed. (See copy of depository bank's correspondence accompanying Plaintiffs' Motion.)

The extent of the Plaintiffs' attempts to locate Arthur may be summarized briefly as follows:

1. Contacted postal authorities at the address listed in the above mentioned check: P.O. Box 215, Broomall, PA 19008.

   The Plaintiffs were informed that this post office box was closed and that no forwarding address was provided. (See copy of postal form 1093 accompanying this Motion). This form also indicates that individual Defendant Ripp (See "Individual Defendants", *supra* ) and one Elmer J. Black ("Black") were authorized to accept the mail addressed to this box.

2. Attempted to contact Black by telephone at the number listed for him on the postal form. Through a telephone conversation with one who represented himself to be the son of Black the Plaintiffs learned that Black is deceased. Also, this person informed Plaintiffs that he was familiar with Arthur and Ripp.

3. The Plaintiffs contend that they have learned through deposition of Joseph P. O'Connor, ("O'Connor") an individual Defendant in this action, that Arthur was (in 1978) a sole proprietorship of Ripp.

Based upon these facts the Plaintiffs believe that they may also effectuate service upon Arthur by providing service of process upon Ripp.

For the reasons set forth in our treatment of the Plaintiffs' Motions for substitute service upon the "Individual Defendants" and "Pennsylvania Corporate Defendants," *supra,* we find that service of process in this instance may be effectuated under either Pa.R.Civ.P. 2079(c)(5) or 2180(d), regardless of the legal nature of the Arthur entity. Because we take notice of Pa.R.Civ.P. 2131 and 2157 which provide similar provisions for service of process upon partnerships and unincorporated business associations, respectively, we need not reach the issue of Arthur's exact legal nature for the purposes of deciding this present motion for substitute service by "special order" of the court.

Further, for the reasons set out in more exacting detail, *infra,* we find that under the Pennsylvania Rules of Civil Procedure the present facts and circumstances justify this Court's authorization of a special order for service of process upon Arthur by publication. The Plaintiffs have made a good faith effort to locate this Defendant and its principals; and, it appears, based upon the

---

**9.** Publication is ordered, additionally, in this district for same reasons as set forth in conjunction with the previous Motion, *supra.*

presently available information, that publication of notice in the newspapers designated below is reasonably calculated to convey the required notice to Arthur.

Therefore, based on the above considerations, this Court authorizes service of process to be made upon Defendant Arthur Coal Company by publication of an appropriate notice in the *Miami Herald,* the *Philadelphia Inquirer* and a newspaper of general circulation throughout the Western District of Pennsylvania.[10]

\*　　\*　　\*

Appropriate Orders will issue.