**Henry V. PHILLIPS**

v.

**Samuel R. FLYNN**
**and**
**William L. Pete.**
**Civ. A. No. 72-1040.**

United States District Court,
E. D. Pennsylvania.

Jan. 14, 1974.

Frederick D. Duden, Jr., of Duden & Galbally, Philadelphia, Pa., for plaintiff.

Jonathan D. Herbst, of Detweiler, Hughes & Kokonos, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HIGGINBOTHAM, District Judge.

In this diversity action the defendant, Samuel R. Flynn, has, in accordance with Fed.R.Civ.P. 55(c), moved the Court to set aside a default entered against him pursuant to Fed.R.Civ.P. 55(a). For reasons hereinafter set forth, the Court in an equitable exercise of its discretion concludes that defendant's motion should be granted.

The rather unusual procedural history besetting the parties here should be recited.

This litigation arose out of an automobile collision in Pennsylvania between the plaintiff and defendant Flynn; defendant Flynn was the operator of one of the vehicles but that automobile was owned by defendant Pete. The plaintiff is a resident of New Jersey and both Flynn and Pete are residents of Pennsylvania. At the time of the accident, it was disclosed in the police investigative report of this accident that Flynn's address was 51 Concord Road, Chester, Pennsylvania.

Two unsuccessful attempts at personal service on Flynn were made by the Marshals.[1] In the first instance the Marshals were given 55 Concord Road, Chester, Pennsylvania, as Flynn's address. The summons and complaint were returned unserved with a notation that this was an incorrect address. The address was corrected and a second attempt at personal service was made by the Marshals at 51 Concord Road, Feltonville, Pennsylvania. On August 25, 1972, the Marshal's records noted: "Above named [Flynn] does not live at home with parents. Present address unknown."[2]

In order to obtain in personam jurisdiction over Flynn, the plaintiff resorted to substituted service in accordance with Pennsylvania's long-arm statute, 75 P.S. §§ 2001–2003, and Fed.R.Civ.P. 4(d)(7) and 4(e). Pursuant to 75 P.S. § 2002,[3] plaintiff by registered mail served the Secretary of the Commonwealth on September 18, 1972. A copy of the complaint was additionally mailed to Flynn at 55 Concord Road, Chester, Pennsyl-

---

1. Defendant Pete was personally served and on October 11, 1972, an appearance was entered by the same firm and in fact the same attorney who now represents Flynn.

2. At the time of the accident in question, defendant Flynn was 21 years of age.

3. 75 P.S. § 2002 states:
 "Manner of service of process in action against non-resident or absent owner or operator of motor vehicle
 "Such process shall be served, by the officer to whom the same shall be directed, upon the Secretary of the Commonwealth of the Commonwealth of Pennsylvania, by sending by registered mail, postage prepaid, at least fifteen (15) days before the return day of such process, a true and attested copy thereof, and by sending to the defendant, by registered mail, postage prepaid, a like true and attested copy, with an endorsement thereon of the service upon said Secretary of the Commonwealth, addressed to such defendant at his last known address. The registered mail receipts of the Secretary of the Commonwealth and of such defendant shall be attached to and made a part of the return of service of such process: Provided, That if the defendant refuses to accept the notice mailed, or cannot be found at his last known address, the registered mail return receipt or other evidence of such facts shall be attached to and made a part of the return, and shall constitute sufficient service under the provisions of this section."

vania, rather than 51 Concord Road, Chester, Pennsylvania, the address contained in the police accident report, or 51 Concord Road, Feltonville, Pennsylvania, which apparently was the address of Flynn's parents. On October 4, 1972, the plaintiff also sent a copy of the complaint in this action to the appropriate adjusting company with a cover letter indicating that the Secretary of the Commonwealth had been served.

On October 23, 1972, Flynn's current attorney and incidentally the same attorney for Pete, advised plaintiff's counsel by letter that he had recently entered an appearance and answer for Pete only and, *inter alia*, agency was being denied. Moreover, the letter further stated:

"My principal has instructed me not to enter an appearance for Defendant Samuel R. Flynn. At the time of the accident Mr. Flynn was not driving the car with the permission of the named insured, William L. Pete. Accordingly, there is no insurance coverage for Mr. Flynn." Doc. No. 25, Exhibit "B".

On November, 21, 1972—which was roughly forty (40) days after the expiration of time for the filing of an answer or some other responsive pleading, and twenty-nine (29) days after the adjusting company decided it would not defend Flynn—plaintiff moved for an entry of default against Flynn.

On January 4, 1973, the same attorney representing defendant Pete entered a general appearance in behalf of Flynn. No answer was filed nor was jurisdiction in any way contested. A pretrial conference was held on this matter by the Magistrate on October 2, 1973, at which an attorney appeared for Pete

only, but not for Flynn.[4] At the pretrial conference the Magistrate disclosed that this case would probably not be called for trial before November 12, 1973.

It was not until November 9, 1973— almost one year after the entry of default and eleven (11) months after the appearance for Flynn—that Flynn filed a petition to set aside the default.[5]

Several other extenuating facts should be mentioned. The docket entries regarding this particular litigation, which must be maintained in the Clerk's Office pursuant to Fed.R.Civ.P. 79, were recorded in part inaccurately, at least insofar as they pertain to service of process on defendant Flynn. Until as late as October 4, 1973, docket entry # 5, dated October 4, 1972, read:

Alias summons returned "unserved" and filed.

Docket entry # 6, dated October 13, 1972, stated:

Alias summons returned "on 10–11–72 served William L. Pete, and *unserved* as to Samuel R. Flynn" and filed.

Sometime between October 4, 1973 and November 12, 1973, the above docket entry # 5 was changed to read:

Alias summons returned: "on 9–18–73 served Secty of Commonwealth of Pa. as to H. V. Phillips unclaimed", filed.

Docket entry # 6 was unaltered. Docket entry # 5 was changed on a third occasion sometime between November 12, 1973 and November 27, 1973, and now reads:

Alias summons returned: "on 9–18–73 served Secty of Commonwealth of Pa.; as to S. R. Flynn—unclaimed", filed.

---

4. A different attorney than the one of record appeared for Pete, but this attorney was from the same firm.

5. At the time Flynn filed his petition, the case was number two (2) in the Court's trial pool. In fact on November 5, 1973, the

Court contacted counsel alerting them that their case would soon be tried. It was only because plaintiff's counsel was then out of the country that the case was continued and not called for trial on that day or the next day.

Notwithstanding this latest version, docket entry # 6 remains unchanged and still appears as noted above:

> Alias summons returned "on 10–11–72 served William L. Pete, and *unserved* as to Samuel R. Flynn" and filed.

In many respects either way Flynn's petition is decided will result in inequitable consequences. Unquestionably, well before the default was entered against Flynn, the insurance carrier for Flynn and Pete had actual notice of the pendency of this litigation and reliable unofficial notice that the Secretary of the Commonwealth had been served. At this stage of the litigation the attorneys for the insurance carrier elected *not* to defend Flynn. Unfortunately, it is not clear that Flynn himself had notice of the action. Since for reasons hereinafter appearing there was not a strict compliance with the substituted service statute, it would be unfair to penalize Flynn for the conduct of the carrier. Any judgment rendered against Flynn would have to be borne entirely by him rather than the insurance company if for some reason it is determined that Flynn legally is not covered by the insurance policy.

 Federal courts are bound by Pennsylvania court constructions regarding the Commonwealth's substituted service statutes. See, *e. g.*, Wade v. Romano, 179 F.Supp. 72, 74 (E.D.Pa. 1959); Breskman v. Williams, 154 F. Supp. 51, 53 (E.D.Pa.1957); and Alopari v. O'Leary, 154 F.Supp. 78, 80 (E.D. Pa.1957). Under Pennsylvania law a statute authorizing substituted service is in derogation of common law and accordingly such a statute must be strictly construed. McCall v. Gates, 354 Pa. 158, 47 A.2d 211 (1946); Williams v. Meredith, 326 Pa. 570, 192 A. 924 (1937); and Hughes v. Hughes, 306 Pa. 75, 158 A. 874 (1932).

 In the instant case, the complaint was mailed to 55 Concord Road, Chester, Pennsylvania which was not the last known address of Flynn as is required by the statute. Either 51 Concord Road Chester, Pennsylvania, the address found in the police report, or 51 Concord Road, Feltonville, Pennsylvania, the home of his parents, would have been more appropriate substitutes for strict compliance with the statutes. In the *Breskman* and *Alopari* decisions, *supra*, the Courts found that where there was no showing of the endorsement on the defendant's summons of service upon the Secretary of the Commonwealth, the service of process was ineffective and could be set aside. The same result must be reached here. Although substituted service on Flynn was invalid, still the Court nonetheless has jurisdiction over Flynn due to his general entry of appearance and failure to contest jurisdiction thus thereby constituting a waiver to any such claim. Fed.R.Civ.P. 12(h)(1)(B). However, after Flynn's general appearance a second default was not entered pursuant to Fed.R.Civ.P. 55(b)(2).

 Even if this Court's conclusion is erroneous that the substituted service was defective, Flynn's petition to set aside the default should be granted. Upon a showing that the defaulting party (1) had "good cause" for his default, (2) has a meritorious defense and (3) moves to set aside a default within a reasonable time, the petition should be granted. See generally 6 Moore's, Federal Practice ¶¶ 55.09, 55.10[1]–[4] at 55–201 to 55–257 (2d ed. 1972). The granting or denial of the petition is discretionary, however, with the Court, the disposition being contingent upon the particular equities of the case.

It is regretful that Flynn did not move with more dispatch to set aside the default following his general appearance. Insofar as there was any reliance upon the inaccurate docket entries, Flynn's knowledge was precisely identical on January 4, 1973, when he filed his ap-

pearance, to that on November 9, 1973, when he filed his petition. On either date, docket entry #5 did not reflect that the Secretary of the Commonwealth had been served. The second "correction" on docket entry #5 was probably made between November 9, 1973 and November 12, 1973.

In Gillespie v. Hysmith, 44 F.R.D. 476 (W.D.Pa.1968), the Court set aside a default where counsel had regularly checked the Clerk's file jacket and found no issuance or service of summons, although if he had examined the Clerk's docket sheets he would have discovered that there had been a notation with regard to the summons. The case at bar presents virtually the converse situation Here an examination of the official Clerk's docket sheets before November 1, 1973, would not have disclosed that the Secretary of the Commonwealth had been served. It is true that the insurance carrier as early as October 1972 had unofficial notice from plaintiff's counsel, but this could not have been confirmed by reference to the docket sheets.

In view of the confusion surrounding the docket entries, Flynn's petition will be granted and will not be treated as untimely even though it comes eleven (11) months after his general appearance in the case. The disarray of the docket entries was ongoing until the end of November 1973.[6]

It must however be further noted that the lack of diligence of counsel for Flynn or the carrier for Flynn is inexcusable. The defendants must be ready to proceed forthwith to trial on the merits, for certainly on the facts of this case defendant Flynn should not be able to delay adjudication of the merits by reason of his prior failure to move with appropriate dispatch.

---

6. The Court is mindful that on January 4, 1973 when Flynn's counsel entered his appearance, at that time he had record notice of the default against his client. In actuality the status of the docket sheets *after* the entry of appearance by Flynn's counsel did not in any way hamper or prevent Flynn at an earlier date from petitioning the Court to set aside the default. Nonetheless, the Court will exercise its discretion, maybe somewhat too generously, and allow the default to be set aside.