Jack BORON, Plaintiff,

v.

WEST TEXAS EXPORTS, INC., Solmar Logistics, Inc., Old Republic Insurance Co., and Sonoma Poultry & Egg Dealers, Inc., d/b/a Petaluma Poultry Processors, Inc., Defendants.

No. 87–0360–Civ.

United States District Court,
S.D. Florida,
Miami Division.

March 8, 1988.

Weitzner & Russom, Miami, Fla., for Boron.

Rhea Grossman, Miami, Fla., for West Texas Exports, Inc.

Jack Coe, Chicago, Ill., for Sonoma Poultry & Egg Dealers, Inc., and Petaluma Poultry Processors, Inc.

Robert Rubinstein, Miami, Fla., for Old Republic Ins., Co.

Rex Guthrie, Miami, Fla., for Solmar Logistics, Inc.

## MEMORANDUM OPINION AND ORDER ON MOTIONS AND ON RESPONSE TO ORDER TO SHOW CAUSE

SPELLMAN, District Judge.

THIS CAUSE comes before the Court upon Plaintiff's Response to this Court's Order to Show Cause Why this Complaint Should not be Dismissed for Lack of Personal Jurisdiction, upon Defendant OLD REPUBLIC'S Motion to Dismiss, and upon Defendant WEST TEXAS' Motion to Set Aside Default, and various other motions pertaining to discovery matters.

### Background

This is an action in warranty and contract by a Florida resident, JACK BORON (hereinafter "Boron") against WEST TEXAS EXPORTS, INC., SONOMA POULTRY, SOLMAR LOGISTICS, INC., and OLD REPUBLIC INSURANCE CO. The first three Defendants are Texas Corporations, the fourth, a Pennsylvania corporation. Although Boron does not allege the principal place of business of each Defendant, he does allege that it is not Florida. Defendants challenge the sufficiency of such allegations for purposes of establishing diversity jurisdiction, but do not controvert the allegations themselves. Boron alleges that he entered into an oral contract wherein he agreed to purchase 112,000 pounds of a certain cut of chicken meat to be frozen and packaged for delivery to Jamaica. It further appears from the insurance contract procured from Old Republic (Complaint, Exhibit "A") that the chicken was to be shipped from San Francisco to Houston, from where it would be shipped by steamer to Jamaica, bypassing Florida completely. The chicken was to be processed by Sonoma and sold to West Texas for resale to Boron. Boron alleges that Solmar had orally undertaken to inspect the goods to be shipped under this contract.

When the chicken arrived in Jamaica, it was allegedly of a poorer quality than Boron had been promised and it had been badly freezer burned due to poor packing, such that it was seized and condemned by the Chief Public Health Inspector at King-

ston, Jamaica. Moreover, when Boron made a claim pursuant to the insurance policy issued by Old Republic, and under which Solmar was the named insured and Boron was named as the Loss Payee, Old Republic refused payment. The insurer claimed, *inter alia*, that the chicken was damaged due to improper packing and not because of a fortuitous event.

Procedurally, the case has been complicated. Sonoma moved to dismiss on several grounds, the only one of which the Court found had any merit being lack of personal jurisdiction. After default was entered against West Texas for failure to respond, it moved to vacate the default and for dismissal for lack of personal jurisdiction, and for other bases which the Court found unmeritorious.

The Court was uncertain as to whether Boron had alleged an adequate basis by which the Court could exercise personal jurisdiction over the Defendants. It was fairly apparent that the transaction underlying this complaint had some contact with the state of Florida. The Plaintiff, Boron, lives here. Moreover, at Boron's solicitation, West Texas shipped samples of its products to him in Florida. The uncontroverted facts show that Boron relied upon these samples in deciding to enter into the sales contract presently before this Court. The Court was doubtful as to whether such facts alone satisfied the due process minimal contacts threshold for the exercise of jurisdiction.

Boron's affidavit, however, suggested that he might better be able to demonstrate a basis for the exercise of jurisdiction by this Court. Specifically, Boron alleged in paragraphs 7–10 of his affidavit that, contrary to assertions in its Motion to Dismiss and Motion to Vacate, West Texas had done substantial business with several Miami corporations. On September 30, 1987, this Court issued an Order giving Boron 45 days to conduct expedited discovery in the form of deposition or affidavits to give Boron an opportunity to substantiate his allegations and to demonstrate an adequate basis for the assertion by this Court of jurisdiction over the Defendants.

In response to the Court's Order, Boron deposed representatives of two Miami corporations with whom he had alleged that West Texas had been conducting business. He was less successful in his attempt to do the same with respect to Consumer Meats, Inc., the company with which he claimed Sonoma had been doing business. After noticing that company for deposition for October 22, 1987, the deponent failed to appear. *See* Certificate of Non–Appearance filed on November 13, 1987. On October 29, 1987, Boron moved the Court to Compel this witness to attend his deposition. On December 7, Boron renoticed Consumer Meats for Deposition to be taken on December 17. Defendants West Texas and Sonoma moved for a protective Order.

In support of its Motion to Vacate Default, on July 2, 1987, West Texas filed the affidavit of Lee Smith, the President of West Texas. This affidavit was also incorporated by West Texas in its August 20, 1987, Supplemental Motion to Dismiss and for Rule 11 Sanctions. Significantly, Lee Smith swore that "WEST TEXAS EXPORTS, INC. does not conduct any business of any kind in Florida and never has conducted any business of any kind in Florida." Affidavit at paragraph 3. In reviewing the initial Motion to Vacate and to Dismiss, the Court had no reason to believe that this affiant was anything other than credible and acting in good faith. Consequently, the Court's initial impression was that, weighing West Texas' questionable Florida contacts as asserted by Boron against so unequivocal a disclaimer of jurisdictional contacts by West Texas, jurisdiction probably did not lie. The Court has abandoned this point of view.

In light of the deposition testimony and exhibits submitted by Boron, the conclusion is unavoidable that Smith's affidavit was evasive, filed in bad faith, and in fact, a brazen lie. The deposition testimony indicates that Smith personally appeared in Miami to transact business with at least two different cold storage warehouses. The uncontroverted evidence shows that he leased substantial amounts of space at the warehouses for over a six month period at

a cost of several thousand dollars. It escapes the Court's imagination as to how, in good faith, Smith could have sworn never to have done any business of any kind in Florida on July 2, 1987; how he could have reaffirmed that solemn oath on August 20, 1987; and how, in in light of the Court's warning on September 30, 1987 that discovery incident to the jurisdictional issue proceed "expediently and in the best of faith," he could remain silent while intending for the Court to rely on his previous outrageous misrepresentation in deciding a critical issue in this case. This was unconscionable.

It further escapes the Court how a party against whom default had been entered could ask for equity while lying to the Court. The Court can no longer believe this Defendant's representations. The relief which West Texas requests must be denied on several bases.

### Personal Jurisdiction [1]

■ First, the Court has thoroughly reviewed the evidence submitted by Boron in response to the Court's Rule to Show Cause. It appears that the Plaintiff has demonstrated the existence of sufficient jurisdictional facts to justify the adjudication by this Court of the rights and obligations as between West Texas and Boron without offending notions of fundamental fairness. It is axiomatic that jurisdiction over a dispute that arises out of or *is related to* a Defendant's minimum contacts with the forum state does not offend due process. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 904 (1984); *Borg–Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055 (11th Cir. 1986); *National Enquirer, Inc. v. News Group News, Ltd.*, 670 F.Supp. 962 (S.D. Fla.1987). West Texas was engaged in the business of shipping frozen meats to foreign buyers—directly to foreign ports, as well as to the buyers' representatives in the United States. An integral part of its

business entailed storing the frozen meat prior to loading it onto a ship for export. West Texas often executed this important aspect of its business in Miami; in fact, the Defendant spent several thousands of dollars buying Miami warehouse space over a significant period of time.

West Texas had a regular and substantial trade with Jamaican buyers, some of whom purchased meat from West Texas at Miami warehouses. It was entirely foreseeable that anyone who had purchased such freezer burned meat from West Texas might sue the company in this state. This is exactly the sort of lawsuit that West Texas had rendered itself susceptible to defending in a distant forum by the very nature of its business. Therefore, West Texas cannot articulate a claim of unfair surprise.

That West Texas sent samples of its chicken to Boron in Florida bolsters the conclusion that this lawsuit arises out of and is clearly related to this Defendant's contacts with the forum state. Moreover, the Court finds that West Texas purposefully availed itself of the privilege of doing business in Florida. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). This was far from a unilateral or fortuitous presence in the forum. *See Sea Lift, Inc. v. Refinadora Costarricense*, 792 F.2d 989, 994 (11th Cir.1986). West Texas had every reason to anticipate being haled into Florida to defend a suit of exactly this nature. What is more, West Texas might very well have been haled into a Jamaican court to defend this lawsuit. Certainly, it is no less fair, for West Texas to defend in the closer and less expensive of the fora into which he reasonably should have anticipated being haled.

### Setting Aside the Default

Second, it is unfathomable that this Defendant would have the audacity to come before this Court seeking to have a default

---

1. Although the Court independently reaches the conclusion that sufficient contacts exist to justify the exercise of personal jurisdiction over Defendant West Texas, it also reaches the same conclusion for the same reasons listed in the subsections of this Order pertaining to sanctions under FED.R.CIV.P. 11 & 37(b)(2), *supra.*

vacated by means of patently false representations. Although a trial on the merits is the favored means of dispute resolution, this is the case only where a court is convinced that the defaulted litigant has the capacity and the desire to litigate a matter in good faith. One might say that this particular Defendant did not put his best foot forward. It is generally inadvisable to defraud the court from which one seeks relief.

▆▆▆▆ Before a court will vacate an entry of default, it must appear that the defaulted party has a meritorious defense; the defaulted party must act promptly; the defaulted party must show good cause for the default; and vacating the fault must not be unduly prejudicial to the non-defaulting party. *Rasmussen v. W.E. Hutton & Co.*, 68 F.R.D. 231 (N.D.Ga.1975). Moreover, the particular equities of the case must weigh in favor of vacating the default. *Phillips v. Flynn*, 61 F.R.D. 574 (E.D.Pa.1974). In the case at bar, the equities clearly disfavor granting West Texas' Motion to Vacate. Furthermore, the Defendant has not even suggested to the Court the existence of a meritorious defense other than the personal jurisdiction issue which the Court has already decided against West Texas.[2]

▆▆▆ Third, the Court issued an Order on September 30, 1987, in which it directed the parties to complete expedited discovery within 45 days of the date of the Order to present facts bearing on the jurisdictional issue. The Order directed that such discovery proceed "expediently and in the best of faith." As a matter of law, the Court finds that West Texas continued to rely on its false affidavit after the issuance of this Order and that, under the circumstances, its failure to remedy its previous malfeasance constituted bad faith and an unjustifiable dilatory tactic. Thus, West Texas clearly disobeyed a clear discovery Order

of this Court. Accordingly, sanctions pursuant to FED.R.CIV.P. 37(b)(2) are appropriate.

▆▆▆ In *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), the Supreme Court affirmed the imposition of sanctions pursuant to this rule against a Defendant that had disobeyed a Court Order in aid of discovery of facts to determine the propriety of personal jurisdiction. The Supreme Court noted that a Defendant's failure, under Order, to produce evidence demonstrating that jurisdiction over its person was improper justified a presumption that the Defendant could not establish such facts. Undoubtedly, such a presumption is even more applicable where a Defendant misrepresents the truth in an effort to avoid jurisdiction. Here, the sanction is particularly just in that the Plaintiff has proffered facts supporting the assertion of jurisdiction by this Court, while the Defendant has offered a false general denial of such facts. Only after Boron documented West Texas' substantial contacts with this state did that Defendant acknowledge such contacts, and attempt to explain them away. Accordingly, we view the Plaintiff's assertion of personal jurisdiction over West Texas as established. The Court finds that, under this rule, deciding the personal jurisdiction issue against West Texas is a just sanction, more than appropriately related to the discovery Order that West Texas chose to ignore and to West Texas' reprehensible conduct.

▆▆▆ Finally, in its Order of September 30, 1987, the Court warned the parties that it would impose Rule 11 sanctions if it appeared at a later time that a party's position regarding the jurisdictional issue were lacking a reasonable basis in fact. Rule 11 empowers a district court to impose appropriate sanctions upon its own

---

**2.** Moreover, under Rule 11, the Court is of the opinion that on the basis of the Defendant's pleading, it could have stricken West Texas' responsive pleading and entered the default on its own initiative. See discussions of FED.R.CIV. P. 11 & 37(b)(2), *supra*. Certainly, refusing to vacate a default for which the Defendant itself is

responsible is also a permissible sanction in light of West Texas' egregious misconduct. There is no basis for granting either West Texas' Motion to Dismiss or its Motion to Vacate the Default. The default entered against West Texas was within the jurisdiction of the Court.

initiative where a pleading is signed containing matters that are not grounded in fact and which would have been discovered after a reasonable investigation. In fact, here it is apparent that a reasonable investigation was unnecessary—the Court finds that Lee Smith *knew* of the glaring falsity of his averments. *See Collins v. Walden,* 834 F.2d 961 (11th Cir.1987). His assertions are completely devoid of credibility. Accordingly, an appropriate sanction under these facts is to resolve all disputes on the jurisdictional issue in favor of Boron.

### Remaining Defendants

■ As to Sonoma, Boron appears incapable of demonstrating a basis for the exercise of jurisdiction. In his affidavit, Boron avers that third parties have informed him that Consumer Meats "carried products processed by" Sonoma. In its affidavit, Sonoma avers that it has conducted no business whatsoever in this state. Contrary to West Texas' affiant, Sonoma's affiant has done nothing to impugn his credibility. Boron seeks to depose Consumer Meats to prove that "they carried products processed by" Sonoma. This allegation, even if conclusively established, is a facially insufficient basis for the exercise of long-arm jurisdiction over Sonoma. Sonoma is a Texas poultry processor that has no connection to this forum other than the fact that it sold its products to this particular Texas distributor. This lawsuit did not arise out of the particular product that may have been "carried" by Consumer Meats at some remote point in the past. Unlike West Texas, Sonoma did not carry out a significant portion of its business in Florida the nature of which is inextricably related to the subject matter of this lawsuit.

The Court is of the opinion that Boron's Motion to Compel Attendance by Consumer Meats should be denied because the facts which Boron seeks to establish would not have a material impact on the disposition of Sonoma's Motion to Dismiss for Lack of Personal Jurisdiction. Sonoma in no way has purposefully availed itself of the privilege of doing business in this state. To exercise jurisdiction over this Defendant would offend principles of fundamental fairness and thus exceed the limits of due process.

■ As to Defendant Solmar, Boron has clearly ignored that part of the Court's Order of September 30, 1987, which directed him to seek a default against Solmar. To date, Solmar has not made an appearance. For Boron's failure to comply with an Order of this Court and for his failure to prosecute his claim as to this Defendant, Solmar Logistics, Inc., is Dismissed from this cause.

■ The final matter presently before the Court is the Motion to Dismiss of Defendant Old Republic Insurance Co. A careful review of the pleadings reveals that Old Republic's Motion is meritorious. Boron has not alleged an adequate basis for the exercise of long-arm jurisdiction over this Defendant. The only plausible basis for jurisdiction over this Defendant is the fact that Old Republic issued a contract of insurance with Solmar Logistics as the named insured and with Boron named as the payee in case of loss. The Florida long-arm statute authorizes the exercise of jurisdiction over an insurer that insures any person, property or risk located in this state. Fla.Stat.Ann. sec. 48.193(1)(d) (1984). It is clear that the risk insured in this contract was the quality of the chicken meat shipped from Houston to Jamaica. The risk was never present in the state of Florida. Moreover, Boron alleged no other contacts that Old Republic may have had with this state that would provide an adequate basis for the exercise of long-arm jurisdiction. *See Meyer v. Auto Club Insurance Ass'n,* 492 So.2d 1314 (1986). This Court may not exercise jurisdiction over Old Republic.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant West Texas' Motion to Dismiss and Motion to Vacate Default are DENIED, and that Plaintiff Boron shall move for default judgment within 15 days of the date of this Order; that Defendants Sonoma and Old Republic's Motions to Dismiss are GRANTED for lack of Personal Jurisdiction over these particular Defendants;

that all Pending Motions pertaining to discovery are MOOT; and that Defendant Solmar Logistics is DISMISSED with Prejudice from this cause for Boron's failure to prosecute and to comply with an explicit Order of this Court.

Further, inasmuch as the Court finds that an appropriate sanction under FED.R. CIV.P. 11 against Defendant West Texas is the payment of reasonable attorneys fees and costs incurred by the Plaintiff in defending against West Texas's jurisdictional attack, the Plaintiff is directed to file affidavits specifically addressing these expenses.