**ALMACEN BOYACA CIA. LTDA., Plaintiff,**

v.

**GRAN GOLFO EXPRESS, Transnave, Inc., and QRM Transportation, Inc., Defendants.**

No. 90–0420–CIV.

United States District Court, S.D. Florida.

Aug. 27, 1991.

Edward M. Joffe, Miami, Fla., for plaintiff.

Allan R. Kelley, Miami, Fla., for Gran Golfo Exp.

Edwin P. Krieger, Miami, Fla., for QRM Transp., Inc.

## ORDER DENYING MOTION TO VACATE

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon Defendant QRM TRANSPORTATION, INC.'s Amended Motion to Vacate Default.

### BACKGROUND

This is an action for breach of contract, breach of duty arising out of a mutual benefit bailment, conversion and civil theft.

On March 30, 1989, the Plaintiff, through its Miami agent (American Business Services Corporation [ABS]), entered into an agreement with Gran Golfo Express (GGE), and GGE's agent Transnave. GGE/Transnave agreed to ship merchandise for the Plaintiff in a forty foot container from ABS' premises in Miami to Ecuador. Passage for the ocean leg of the shipment was booked on the Pocantico V/2 for April 1, 1989.

Pursuant to the agreement, GGE/Transnave retained the services of QRM to provide a container to ABS for the purpose of loading and transporting the subject merchandise. QRM was also hired to pick up the container at ABS and to deliver the container by land to Transnave Shed D, Dodge Island. The merchandise was to be loaded from Dodge Island to the Pocantico for the ocean leg of the shipment.

QRM picked up the container late in the day on March 30, 1989. QRM did not attempt to make delivery to Shed D on Dodge Island because the facility would have closed before they could have arrived. QRM took the shipment to their own facility for storage over night. The container

with all the Plaintiff's merchandise was stolen from QRM's yard.

QRM was served with the summons and complaint in this matter on February 15, 1990. On March 23, 1990, a default was entered against QRM on Plaintiff's motion, pursuant to Rule 55, for failure to plead or otherwise defend in this matter. Plaintiff filed a motion for final judgment by default on April 2, 1990. In August of 1990, QRM was served with the motion for default, default, and motion for final judgment.

On January 22, 1991 QRM filed a Motion to Vacate Default. QRM's Amended Motion to Vacate Default was filed February 1, 1991.

### ANALYSIS

A party seeking to vacate a default has the burden of showing good cause as to why the default should be vacated. Before a court will vacate an entry of default, the defaulted party must show:

a. the existence of a meritorious defense,

b. timely action to cure the default,

c. good cause for the default, and

c. lack of prejudice to the non-defaulting party.

*Boron v. West Texas Exports, Inc.*, 680 F.Supp. 1532, 1536 (S.D.Fla.1988).

#### Meritorious Defense

QRM alleges that their defense in the instant action is governed by the Carriage of Goods by Sea Act ("COGSA"), specifically the limitation of liability provisions of 46 U.S.C.App. Section 1304(5).[1] COGSA was established to provide uniform ocean bills of lading to govern rights and liabilities of carriers and shippers; it makes no reference to agents of carriers. *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959).

By its terms, COGSA applies to the carrier only in relation to the loading, han-

---

**1.** That section states that "Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading."

dling, stowage, carriage, custody, care and discharge of goods, and not to those periods unrelated to loading and unloading. *Philip Morris v. American Shipping Co., Inc.*, 748 F.2d 563, 566 (11th Cir.1984), rehearing denied 753 F.2d 1087. While COGSA does not provide any limitation of liability in favor of third parties (such as independent contractors), the parties, by the bill of lading, may extend to third parties the limitation of liability granted the carrier under Section 1304(5). *Caterpillar Overseas, S.A. v. Marine Transport, Inc.*, 900 F.2d 714 (4th Cir.1990).

■ Bill of lading provisions which extend defenses and protections to the carrier's agents and contractors are known in admiralty law as "Himalaya" clauses. In the context of COGSA limitation of liability, Himalaya clauses must be "strictly construed and limited to intended beneficiaries." *Certain Underwriters at Lloyd's v. Barber Blue Sea Line*, 675 F.2d 266, 269 (11th Cir.1982).

In the instant case, the Plaintiff argues that the Himalaya clause contained in Gran Golfo's bill of lading would not extend the limitation of liability of COGSA to QRM, since the Himalaya clause does not include pre-carriers[2]. The Plaintiff further argues that QRM was acting as an independent contractor performing non-maritime duties, thus falling outside the protection of COGSA. In addition, there is a question regarding whether the Gran Golfo Bill of Lading was ever executed.

■ In determining the meaning of the term independent contractor in the application of a Himalaya clause the court should take into consideration the nature of the services performed compared to the carrier's responsibilities under the carriage contract. *Taisho Marine & Fire Ins. Co. v. The Vessel "Gladiolus"*, 762 F.2d 1364, 1367 (9th Cir.1985). If the independent contractor is performing a non-maritime service, that is another factor to be given weight in ascertaining whether the third party qualifies for the "Himalaya" limitation. *Id.*

■ Perhaps the most telling provision of the Gran Golfo bill of lading is the clause on Intermodal Transportation which states:

> If the place of receipt of the goods as indicated herein is a place other than the port of loading and/or if the place of delivery indicated herein is a place other than the port of discharge the carrier will procure transportation by other authorized carriers (pre-carriers) from the place of receipt to the port of loading ... and the carrier will guarantee the performance by each such precarrier in accordance with their respective tariffs, bills of lading, and/or other freight contracts and the laws and regulations applicable to each....

This provision is particularly significant since pre-carriers are treated separately in the bill of lading from servants, agents, stevedores and contractors. Servants, agents, stevedores and contractors are specifically mentioned in the Gran Golfo Bill of Lading Himalaya clause—pre-carriers are not. Thus, it is obvious that the subject bill of lading demonstrates an intent by the parties to treat pre-carriers differently from servants, agents, stevedores and contractors. In other words the parties,

2. The Himalaya Clause in Gran Golfo's Bill of Lading states:

**3. Carrier's Servants, Agents, Stevedores, Contractors, etc.** Because the Carrier requires the assistance of persons and companies to perform the work and services undertaken by it in connection with the Goods described herein as well as the goods of others the Master, officers and crew members of vessels performing hereunder and the contractors, stevedores, longshoremen, agents, representatives, employees and others used, engaged or employed by the Carrier in the performance of the aforesaid work and servic-

es of the Carrier shall be a beneficiary of this contract and shall be entitled to all exemptions and immunities from and limitations of liability which the Carrier has under this bill of lading whether written printed or stamped hereon or incorporated by reference herein and under the United States Carriage of Goods by Sea Act 1936 and in entering into the provisions of this clause the Carrier to the extent of such provisions does so not only on its own behalf but also as agent and trustee of each of the persons and companies described above all of whom shall be deemed parties to the contract evidenced by this bill of lading.

through the subject bill of lading, made a clear distinction between individuals who assist in maritime related activities (such as stevedores where COGSA applies), and the non-maritime related activities (such as pre-carriers where COGSA does not apply). Such a distinction is consistent with the purpose of COGSA.

The nature of the services performed by QRM clearly fall into the "pre-carrier" and "non-maritime" categories, and outside the Himalaya clause. Assuming that there was an intent between the parties to execute the Gran Golfo Bill of Lading[3], the provisions of the Himalaya clause within that bill of lading do not operate to limit QRM's liability in this case. Thus, QRM's "COGSA" defense is without merit. The other defenses raised by QRM in this matter, most of which are derivatives of the "COGSA" defense, are also meritless.

*Timely Action to Cure Default*

██ Aside from the issue of a meritorious defense, QRM has failed to act in a timely manner to cure the default in question. QRM was served with the summons and complaint in this matter in February, 1990, and served by U.S. mail with a copy of the Default and Motion for Final Default Judgment in August, 1990. QRM did not attempt to challenge the default until January of 1991, approximately ten months after the Answer was due. Thus, QRM has failed to act with that degree of urgency necessary to set aside the default.

*Conclusion*

Having already determined that QRM has failed to satisfy the first two requirements necessary to set aside the subject default, the Court will not address the issues of "good cause" and "lack of prejudice". The Court has reviewed QRM's Amended Motion to Vacate Default thoroughly, as well as the responses and related exhibits, and is otherwise fully advised in the premises. For all of the foregoing reasons, it is

ORDERED AND ADJUDGED that the said Motion be, and the same is hereby DENIED.

DONE AND ORDERED.

---

**3.** If there was no such intent, the liability limitations of COGSA certainly would not be applicable to QRM.